IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ANN L. HAUGHT, | : |
| *Plaintiff,* | : |
| v. | : Civil Action No. WDQ-02-3919 |
| HON. LES BROWNLEE, ACTING SECRETARY, U.S. DEPARTMENT OF THE ARMY, | : |
| | : |
| *Defendant.* | : |

...o0o...

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**

Defendant, The Honorable Les Brownlee,[1] Acting Secretary of the United States Department of the Army, by Thomas M. DiBiagio, United States Attorney for the District of Maryland, and Neil R. White, Assistant United States Attorney for said District, hereby submits this Memorandum in Support of his motion to dismiss or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 12(b)(6) and 56(c).

## I.   INTRODUCTION

Plaintiff, Ann L. Haught, brought this action under Title VII of the Civil Rights Act, as amended, 42 U.S.C. §§ 2000(e), *et seq.,* and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, alleging employment discrimination on the basis of her sex (Count 1) and her age (Count 2). Her Complaint alleges that she was and is "a Secretary in the Executive Office" of the U.S. Army Engineer District in Baltimore. Complaint, ¶ 10.

---

[1] On April 25, 2003, Thomas E. White ceased to be Secretary of the U.S. Department of the Army. Pursuant to Fed. R. Civ. P. 25(d)(1), until a replacement has been confirmed, the Acting Secretary of the Army, Les Brownlee, should be substituted as the sole defendant to this action.

The only allegation of an adverse action taken against her is set forth in paragraph 12 of her Complaint: "Colonel Berwick notified Ms. Haught that she would be downgraded/demoted to a GS-9 effective July 16, 2000 and on retained grade for two years." While it is true that she was notified that she would be downgraded, the fact is that less than three (3) months after she was notified of the downgrade, she was restored to her original GS-10 grade *retroactive* to July 16, 2000. The order to downgrade her simply was rescinded. She never suffered a loss of pay or benefits as a result of the challenged action. No record of the temporary downgrade remains in her Official Personnel File ("OPF"), and in terms of her pay, benefits, and the contents of her personnel file, it is as though the interim downgrade never occurred.

It is undisputed that the downgrade which forms the basis for Plaintiff's action was rescinded and, as discussed below, the law is clear that a temporary downgrade is not an actionable adverse employment action under Title VII or the ADEA. Under no set of facts, therefore, can Plaintiff prove her claims of sex or age discrimination and her Complaint should be dismissed with prejudice. Alternatively, because Plaintiff cannot make a showing sufficient to establish the existence of an element essential her case (and on which she will bear the burden of proof at trial), Defendant is entitled to summary judgment in his favor on both counts of the Complaint.

## II. STATEMENT OF FACTS

Plaintiff, was born on February 3, 1930 and she began her government service on July 28, 1954. For approximately 40 years, Plaintiff has been employed by the U.S. Army Corps of Engineers in the position of a Secretary (Stenography) in the Executive Office, U.S. Army Engineer District, Baltimore. Exhibit 1 (Plaintiff's January 30, 2002 Testimony During the Agency Investigation) at 10-12. Prior to the occurrence of the events described in the Complaint, Plaintiff's

most recent Job Description (JD) was signed December 24, 1991, and was the result of a promotion from a GS-318-09 to a GS-318-10 – i.e., from a GS-09 pay grade to a GS-10. Exhibit 2 (portion of December 24, 1991 Job Description). The promotion to a GS-10 level was accomplished using "man-on-the-job" criteria. *Id.*[2] Until the end of July 2000, Plaintiff's immediate supervisor was the Baltimore District Engineer, Colonel Bruce Berwick.

By memorandum dated November 4, 1999, Lieutenant General Joe N. Ballard, Commander of the U.S. Army Corps of Engineers, directed the Engineer Inspector General ("EIG") to conduct a systemic inspection of civilian classification and staffing requirements within the Corps to determine if the subordinate elements of the Corps were correctly utilizing their "delegated classification authority." Exhibit 4. More specifically, the primary focus of the inspection was to review every "command override" made throughout the Corps of Engineers. Exhibit 5 (Lt. Gen. Ballard's January 30, 2002 Testimony During the Agency Investigation) at 422-23. A command override occurs when a Commander with delegated classification authority authorizes a higher than normal grade for a position over the objection of the Civilian Personnel Operations Center (CPOC). *Id.* As part of the same inspection, a systemic evaluation of targeted positions was undertaken to provide a cross-sectional analysis as to how the Corps of Engineers overall was utilizing its delegated classification authority. *Id.* at 423-27.

---

[2] According to the August 1991 OPM publication, "Introduction to the Position Classification Standards," in classifying General Schedule positions, the impact of the person on the job "can be recognized when the performance of the incumbent broadens the nature or scope and effect of the work being performed. For example, exceptional ability of the employee may lead to the attraction of especially difficult work assignments, unusual freedom from supervision [,] recognition as an 'expert' sought by peers, or similar considerations. *See* Exhibit 3.

On or about January 7, 2000, two positions in the Baltimore District were identified for review as a result of command overrides. Plaintiff's position was not initially identified for review, but Lieutenant General Ballard later included commander's secretaries, including Plaintiff, in the review process. Exhibit 5 at 426. Significantly, Plaintiff was the only GS-10 level secretary throughout the Corps of Engineers at the District level. Exhibit 6 (January 30, 2002 Testimony of Monroe Major, Positional Classification Specialist, During the Agency Investigation) at 245.

On or about March 2, 2000, an EIG inspector and a contracted classification specialist performed a review of the Baltimore positions identified, including Plaintiff's, and concluded that Plaintiff's GS-10 grade was justified. Exhibit 7 (January 30, 2002 Testimony of Barbara Clemens, Assistant Inspector General, During the Agency Investigation) at 203. The Baltimore positions were part of approximately 205 classification reviews conducted by EIG. *Id.* at 204; Exhibit 8 (chart of positions inspected). The EIG turned over all of the classification reviews to the Directorate Human Resources, Headquarters, United States Army Corps of Engineers (CEHR), for review. Exhibit 7 at 204.

CEHR set up a team to review the findings of the EIG for each position. The purpose of this additional review was to search for positions that appeared out of alignment with general grade levels. The procedures for CEHR's review involved an initial examination of all the positions to identify the ones that may have been out of alignment with other similar positions. These identified positions were then subject to further scrutiny by the reviewing team. Exhibit 6 at 242-43. Being the only GS-10 at the District level and one grade higher than comparable secretaries at the Division level, Plaintiff's position was identified as being out of alignment and was subjected to further

scrutiny by CEHR's review team. *Id.* at 243, 245, 247-49. After its review, CEHR decided that Plaintiff's position did <u>not</u> support the GS-10 grade level. *Id.* at 244-45.

Overall, the record reflects that, of the 205 positions reviewed, CEHR recommended 38 downgrades (13 position-holders were female; 25 were male; ages were unknown) and 1 promotion of a female employee. Exhibit 8.

On or about May 31, 2000, Lieutenant General Ballard ordered that the corrective action, as recommended by CEHR's team, be implemented. Exhibit 9. On or about June 30, 2000, the Baltimore District received official notification that Plaintiff's position was to be downgraded from a GS-10 to a GS-09 and that the other secretary was to be downgraded from a GS-09 to a GS-08 Exhibit 10. By letter dated June 30, 2000, Colonel Berwick signed the letter notifying the plaintiff that she would be downgraded to a GS-09 effective July 16, 2000 and on retained grade for two years. Exhibit 11 (letter without enclosures). Exhibit 12 is the formal Request for Personnel Action effecting the interim downgrade.

On or about September 18, 2000, the Baltimore District was notified that, at the direction of the Assistant Secretary of the Army, Patrick T. Henry, the Army's Civilian Personnel Evaluation Agency (CPEA) would be conducting a Desk Audit of Plaintiff's position. Exhibit 13 (January 30, 2002 Testimony of Wayne Richardson, Chief of the Human Resources Office at the Baltimore District, During the Agency Investigation) at 379. On or about September 19, 2000, the audit of the plaintiff's position was performed by CPEA. *Id.* As a result of the CPEA audit, on or about October 11, 2000, Assistant Secretary of the Army (Manpower and Reserve Affairs) Patrick T. Henry ordered Lieutenant General Ballard to restore Plaintiff's GS-10 grade retroactively to the effective date of the downgrade (July 16, 2000). Exhibit 14. Mr. Henry stated that his "determination constitutes the

final Department of the Army decision on the correct classification of these positions." *Id.* This order was executed on October 23, 2000 in the form of an official "cancellation" of the prior action, Exhibit 15 (Notification of Personnel Action), thereby restoring Plaintiff's GS-10 grade retroactively to July 16, 2000. No mention of the downgrade remains in her OPF.

Even though two months prior she had restored to her GS-10 grade, on December 12, 2000, Plaintiff filed a formal complaint of discrimination, alleging that the downgrade resulted from the utilization improper classification procedures, that she was subjected to disrespectful treatment at the hands of her supervisor and co-workers, and that her supervisor improperly questioned her on her plans for retirement. Because Plaintiff indicated that she would be pursuing her claims in federal court, on November 5, 2002 the EEOC Administrative Judge dismissed the case without prejudice.

### III. STANDARD OF REVIEW

#### A. Motion to Dismiss

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) serves to test the legal sufficiency of the complaint. *See*, *e.g.*, *District 28, United Mine Workers of America, Inc. v. Wellmore Coal Corp.,* 609 F.2d 1083, 1085-86 (4th Cir. 1979); *United States v. Azrael*, 765 F. Supp. 1239, 1242 (D. Md. 1991). Thus, for purposes of a motion to dismiss, a court takes as true the well-pleaded allegations of the complaint. *Byrd v. Gate Petroleum Co.*, 845 F.2d 86, 87 (4th Cir. 1988). A court, however, need not accept the truth of inferences or conclusions unsupported by allegations of specific facts. *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir.), *cert. denied*, 479 U.S. 1009 (1986). Nor is a court obliged to accept the truth of legal conclusions in the guise of factual allegations. *Wellmore Coal Corp.*, 609 F.2d at 1085-86.

A court should dismiss a complaint, therefore, if the complaint is unsupported by specific factual allegations sufficient to support a viable claim. *Id.* A court should also dismiss a complaint if, as in this case, it appears beyond doubt that, in support of her claims, plaintiff can prove no set of facts that would entitle her to relief. *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002); *Herlihy v. Ply-Gem Industries, Inc.,* 752 F. Supp. 1282, 1285 (D. Md. 1990). Since Plaintiff cannot prove in this case that she suffered an adverse employment action – which is absolutely necessary for her to succeed on her discrimination claims – dismissal is proper.

### B. Motion for Summary Judgment

The United States contends in the first instance that this Court may dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Nevertheless, if the Court considers matters outside the pleadings in order to resolve the motion, pursuant to Rule 12(b), the motion may be treated as one for summary judgment and disposed of as provided in Rule 56(c).

Under Fed. R. Civ. P. 56(c), a court must enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." As the Supreme Court has emphasized, "[b]y its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Trial courts should enter summary judgment "against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986). Indeed, the Supreme Court has noted that a principal purpose of Rule 56 "is to isolate and dispose of factually unsupported claims or defenses . . . ." *Id.* at 323-324. The Fourth Circuit also has emphasized that trial judges have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).

"[T]he salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) (citation omitted), *cert. denied,* 474 U.S. 829 (1985). If the opponent of a summary judgment does not have a reasonable prospect of prevailing the parties should not be subjected to the time and expense of trial. *Palucki v. Sears, Roebuck & Co.,* 879 F. 2d 1568, 1572 (7th Cir. 1989). A subjective, albeit genuine, belief of discrimination will not, in the employment discrimination context, shield a non-moving plaintiff from a grant of summary judgment. *Goldberg v. B. Green and Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988).

### IV.  ARGUMENT

**PLAINTIFF'S DISCRIMINATION CLAIMS MUST FAIL BECAUSE A DOWNGRADE THAT WAS RETROACTIVELY RESCINDED IS NOT AN ACTIONABLE ADVERSE EMPLOYMENT ACTION**

**A.  Plaintiff Must Prove That She Suffered an Adverse Employment Action.**

Paragraph 1 of Plaintiff's Complaint avers that "this is an action brought to remedy disparate treatment discrimination in employment on the basis of [Plaintiff's] sex and age . . . ." To prove disparate treatment, Plaintiff bears the burden of establishing discriminatory intent. She may attempt to satisfy her burden by proffering direct evidence of unlawful discrimination or by proceeding under

the burden-shifting framework for "pretext" claims enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (*McDonnell Douglas* inapplicable where the plaintiff presents direct evidence of discrimination); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (assuming *McDonnell Douglas* framework applies to ADEA claim).

As discussed below, regardless of which avenue of proof she elects to undertake, she cannot escape the requirement of proving an adverse employment action. The express language of both Title VII and the ADEA require Plaintiff to prove that she suffered a "personnel action" as an essential prerequisite to maintaining a cause of action. *See* 42 U.S.C. § 2000e-16(a) ("All <u>personnel actions</u> affecting [government] employees . . . shall be made free from discrimination . . . .") (emphasis supplied); 29 U.S.C. § 633a(a) ("All <u>personnel actions</u> . . . shall be made free from any discrimination based on age.") (emphasis supplied). The courts, in turn, have interpreted the "personnel action" requirement to mean an <u>adverse</u> personnel action, a/k/a an "adverse employment action." Since the only action of which Plaintiff complains was <u>retroactively cancelled</u> 3 months after its occurrence, Plaintiff has not suffered a "personnel action" of any kind, let alone the requisite adverse employment action.

(1) Direct Evidence

Defendant contends that Plaintiff has no direct evidence of discrimination and her claims, therefore, should be analyzed under the *McDonnell Douglas* approach, discussed below. Paragraph 11 of the Complaint, however, makes reference to two isolated comments reportedly made by Colonel Berwick to the effect that Plaintiff should retire and spend more time with her family.

Plaintiff testified in the administrative proceedings that these comments were made on March 30, 1999 and on January 11, 2000. Exhibit 1 at 15-18. The law is well-settled that the comments made by Colonel Berwick do not and cannot serve as direct evidence of discrimination because (1) they are no more than isolated, stray remarks in the workplace, (2) they were not made by the person who took the alleged action against Plaintiff, and (3) there is absolutely no nexus between suggestions of retirement by Colonel Berwick and a demotion ordered by Lieutenant General Ballard (and reversed by his superiors) many months later, as the direct result of a desk audit. *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (en banc) (the direct evidence threshold requires evidence of conduct or statements that both reflect directly the alleged discriminatory attitude <u>and that bear directly on the contested employment decision</u>), *cert. denied*, 528 U.S. 1189 (2000); *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 606-08 (4th Cir.1999) (plaintiff must produce evidence that clearly indicates a discriminatory attitude at the workplace and must illustrate a nexus between that negative attitude and the employment action); *O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 548-49 (4th Cir.1995), *rev'd on other grounds*, 517 U.S. 308 (1996) (isolated or ambiguous statements are too abstract and too irrelevant to support a finding of discrimination and there must be some nexus between the alleged discriminatory statements and the defendant's employment decisions which are at issue in the case).

Even assuming, purely for the sake of argument, that these comments <u>could</u> serve as direct evidence of discrimination and Plaintiff were to attempt to prove intentional discrimination under the "direct evidence" route, she nevertheless must prove that she suffered an adverse employment action. *Vasquez v. County of Los Angeles*, 307 F.3d 884, 890 and n.7 (9th Cir. 2002) ("We need not decide whether [the plaintiff] offered sufficient direct or indirect evidence of discrimination because

he failed to establish that he suffered an adverse employment action"; and "an adverse employment action is part of any prima facie case, including those cases based on direct evidence of discrimination rather than the *McDonnell Douglas* factors"); *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1231 n.34 (11th Cir. 2001) ("plaintiff must show that an adverse employment action was taken against him regardless of whether he is relying on direct evidence of discrimination or employing the burden-shifting approach established in *McDonnell Douglas*"); *accord Holmes v. Bevilacqua*, 794 F.2d 142, 146 (4th Cir.1986) (plaintiff required to show that, but for the plaintiff's protected characteristics, "the defendant would not have taken <u>the adverse employment action</u>") (emphasis supplied); *Etefia v. East Baltimore Community Corp.*, 2 F. Supp.2d 751, 762 (D. Md. 1998) ("plaintiff must demonstrate by a preponderance of the evidence that the employer's motive to discriminate was a substantial factor in the <u>adverse personnel action</u> against the plaintiff") (emphasis supplied); *see also St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 523-24 (1993) (Title VII only awards damages against employers who are proven to have taken adverse employment action).

(2) *McDonnell Douglas* Framework

The *McDonnell Douglas* approach similarly requires proof of an "adverse employment action." This framework first requires the plaintiff to demonstrate a *prima facie* case of discrimination. Second, if a *prima facie* case is established, an inference of discrimination arises that may be rebutted by an employer on a showing of legitimate, non-discriminatory reasons for the adverse employment actions. *Id.* Third, if the employer makes this showing, the plaintiff must prove by a preponderance of the evidence that the employer's proffered reasons for the adverse employment action are pretextual. *McDonnell Douglas*, 411 U.S. at 804; *Williams v. Cerberonics,*

*Inc.*, 871 F.2d 452, 455 (4th Cir.1989). Although the burden of production may shift to the defendant under this framework, the ultimate burden of persuasion "remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.

In order to establish a *prima facie* case of discrimination under Title VII and the ADEA, Plaintiff must prove: (1) membership in a protected class; (2) that she was qualified for the job in question and her performance was satisfactory; (3) <u>that she suffered an adverse employment action</u>; and (4) that she was treated differently than similarly situated employees outside her protected class. *McDonnell Douglas*, 411 U.S. at 802; *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227-28 (4th Cir. 1998) (citing *McDonnell Douglas*, 411 U.S. at 802); *Lucas v. Cheney*, 821 F. Supp. 374, 375 (D. Md.1992), *aff'd*, 991 F.2d 790 (4th Cir. 1993); *Raley v. Board of St. Mary's County Comm'rs*, 752 F. Supp. 1272, 1278 (D. Md. 1990). Thus, proof that the plaintiff was subject to an adverse employment action is an essential element of a *prima facie* case of discrimination and an absolute precondition to suit. *Autry v. N.C. Dept. of Hum. Res.*, 820 F.2d 1384, 1386 (4th Cir. 1987); *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985), *cert. denied*, 475 U.S. 1082 (1986).

**B.    A Temporary Downgrade is Not an Actionable Adverse Employment Action.**

In defining what constitutes an adverse employment action, the Fourth Circuit observed in *Page v. Bolger*, 645 F.2d 227 (4th Cir.), *cert. denied*, 454 U.S. 892 (1981), that inquiries into whether there has been employment action affecting an employee have "consistently focused on the question of whether there has been discrimination in what could be characterized as ultimate employment decisions such as hiring, granting leave, discharging, promoting and compensation." *Id.* at 233 (emphasis added). The Court went on to state:

12

> By the same token, it is obvious to us that there are many <u>interlocutory or mediate decisions</u> having no immediate effect upon employment conditions which were not intended to fall within ... Title VII.

*Id.* (citation omitted; emphasis supplied). *See also Munday v. Waste Management of N. Amer., Inc.*, 126 F.3d 239, 243 (4th Cir. 1997), *cert. denied*, 522 U.S. 1116 (1998) ("In no case in this circuit have we found an adverse employment action . . . without evidence that the terms, conditions, or benefits of [plaintiff's] employment were adversely affected."). As Plaintiff's downgrade merely was a mediate decision that was retroactively rescinded by the Army's "final" determination, and because she never suffered a loss of pay or benefits, she has not suffered an adverse employment action.

More specifically, established case law supports Defendant's contention here that, as a matter of law, Plaintiff's <u>temporary</u> downgrade from a GS-10 to a GS-9 – <u>restored retroactively less than three months later</u> – cannot constitute an actionable adverse employment action.

The Fourth Circuit, in *Von Gunten v. Maryland*, 243 F.3d 858 (4th Cir. 2001), held that when a downgrade did not "detrimentally alter the terms and conditions of the recipient's employment," it did not constitute an "adverse employment action." *Id.* at 867. The record in this case is clear that, following the retroactive restoration, the terms and conditions of Plaintiff's employment were not altered in any way.

Similarly, this Court, in granting summary judgment for the defendant in an ADEA case, held that "[i]n order for a personnel action to be an adverse employment action, <u>the action must be final and corrective action taken by defendant cannot be used as evidence that discrimination existed</u>." *Lurie v. Meserve*, 214 F. Supp.2d 546, 550 (D. Md. 2002) (citing *Dennis v. County of Fairfax*, 55 F.3d 151, 153-54 (4th Cir. 1995); *Howze v. Virginia Polytechnic Institute and State Univ.*, 901 F. Supp. 1091, 1096 (W.D. Va.1995)) (emphasis supplied). The plaintiff in *Lurie* did not dispute that

the defendant subsequently took corrective action, but asserted that the corrective action did not make him whole because the ADEA authorized liquidated damages and attorneys fees. This Court disagreed:

> "[T]he final decision is the ultimate act" and "there [is] no legal effect from the initial actions." Because Defendant took corrective action, by granting plaintiff an award, a violation no longer exists under the ADEA . . . . Therefore, Plaintiff has failed to substantiate his claim of an adverse employment action under the ADEA . . . . Accordingly, Defendant's motion for summary judgment . . . will be granted.

*Id.* at 550 (quoting *Howze*, 901 F. Supp. at 1097). Notably, in *Howze*, the Eastern District of Virginia held that the plaintiff had failed to establish a prima facie case of retaliation on the basis of the tenure process for lack of an "adverse employment action" when the final layer of plaintiff's tenure review process reversed earlier recommendations against her tenure. 901 F. Supp. at 1096-97.

In addition to the foregoing Fourth Circuit and District of Maryland precedent, numerous cases from other circuits hold that interim or rescinded employment actions, including temporary downgrades, are not adverse employment actions. *Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir. 1987) (temporary demotion did not give rise to cognizable employment action where plaintiff continued to receive same salary and benefits); *Miller v. Aluminum Co. of Am.*, 679 F. Supp. 495 (W.D. Pa.) (layoff was not adverse employment action where employee retained full salary and benefits; temporary transfers or demotions that "reduce the employee's duties and responsibilities but maintain her salary and benefits as before do not constitute adverse employment actions"), *aff'd*, 856 F.2d 184 (3d Cir. 1988); *see also Dobbs-Weinstein v. Vanderbilt University*, 185 F.3d 542, 544-46 (6th Cir. 1999) (citing with approval the Fourth Circuit's decision in *Page v. Bolger*, *supra*, 645 F.2d at 233 and holding that an initial decision to deny a promotion is not an adverse employment action when the denial is later rescinded), *cert. denied*, 529 U.S. 1019 (2000); *Benningfield v. City*

*of Houston*, 157 F.3d 369, 376-78 (5th Cir. 1998) (rescinded formal reprimand, temporary lowering of performance rating, and delayed promotion not adverse employment actions), *cert. denied sub nom, Benningfield v. Nuchia*, 526 U.S. 1065 (1999).

Factually, there can be no genuine dispute that Plaintiff's downgrade from a GS-10 to a GS-09 was merely a mediate or interlocutory decision. It was retroactively and completely reversed by the "final decision" or "ultimate act" of the Army, which cancelled the prior downgrade and restored her GS-10 classification. Legally, Plaintiff has not suffered an adverse employment action and she cannot prove an essential element of her claims of gender and age discrimination.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) or, alternatively, summary judgment should be granted for Defendant on all claims asserted against him pursuant to Fed. R. Civ. P. 56(c).

Respectfully submitted,

Thomas M. DiBiagio
United States Attorney


By:_____/ s /_____
Neil R. White
Assistant United States Attorney
Fed. Bar No. 24273
6625 United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201-2692
phone (410) 209-4830

Of Counsel:
Thomas X. McHugh
Office of Counsel
U.S. Army Corps of Engineers, Pittsburgh District
William S. Moorhead Federal Building, 1000 Liberty Avenue
Pittsburgh, Pennsylvania 15222
phone (412)-395-7494