IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANN L. HAUGHT, | : | |
| *Plaintiff,* | : | |
| v. | : | Civil Action No. WDQ-02-3919 |
| HON. LES BROWNLEE, ACTING SECRETARY, | : | |
| U.S. DEPARTMENT OF THE ARMY, | : | |
| | : | |
| *Defendant.* | | |

...o0o...

### REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

Defendant, the Honorable Les Brownlee, Acting Secretary of the United States Department of the Army, by Thomas M. DiBiagio, United States Attorney for the District of Maryland, and Neil R. White, Assistant United States Attorney for said District, hereby submits this Reply Memorandum in Support of his motion to dismiss or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 12(b)(6) and 56(c).

In his Motion to Dismiss or for Summary Judgment, Defendant argued that Plaintiff's downgrade – <u>retroactively rescinded</u> just 3 months after it was announced – was not an "adverse employment action" and therefore, Plaintiff's age and gender discrimination claims could not be maintained. Specifically, the interim downgrade was a mediate, interlocutory decision that in no way affected the terms, conditions, or benefits of Plaintiff's employment.

In response, Plaintiff does not dispute that it is her burden to demonstrate an adverse employment action, nor does she challenge any of the legal principles set forth in Defendant's Memorandum. Indeed, she only offers 3 arguments in her opposition – all of which are legally incompetent to avoid dismissal or summary judgment.

*First*, relying on her own affidavit, Plaintiff asserts that "the pay rank downgrade decreased [her] salary by [$5,271.00] per year and reduced the annual cost of living adjustment on her pension by one percent annually." Pl. Opp. Mem. at 3.[1]  Plaintiff conveniently omits the fact – established in Defendant's Memorandum (Page 5 and Exhibit 11, ¶ 1) – that the downgrade placed her on a retained grade of GS-10 for 2 years from July 16, 2000.  In other words, even if the action were not retroactively rescinded, her pay would not have been impacted until 2002.  Of course, the fact is undisputed (and admitted by Plaintiff in her opposition at page 3) that the downgrade was retroactively rescinded before any salary and pension effects were felt, fully and completely negating whatever impact on her pay and benefits the downgrade might have had.  Accordingly, it is undisputed that Plaintiff never suffered a loss of pay or benefits as a result of the challenged action.

*Second*, Plaintiff devotes a paragraph to arguing that, because of comments made by her supervisor on March 30, 1999 and January 11, 2000, she can present direct evidence of discrimination.  For the reasons stated on page 10 of his Memorandum, Defendant obviously disputes that Plaintiff can ever meet the threshold to demonstrate direct evidence of discrimination.[2]  But regardless of the vehicle under which Plaintiff elects to prove her discrimination claims, she is

---

[1] Plaintiff did not number the pages of her Response in Opposition or her Memorandum in Support thereof.

[2] As supported with numerous case citations, Defendant contends that the comments made by Colonel Berwick cannot serve as direct evidence of discrimination because (1) they are no more than isolated, stray remarks in the workplace, (2) they were not made by the person who took the alleged action against Plaintiff, and (3) there is absolutely no nexus between suggestions of retirement by Colonel Berwick and a downgrade ordered by Lieutenant General Ballard (and reversed by his superiors) many months later, as the direct result of a desk audit.  Def. Mem. at 10. Plaintiff is well-aware of the fact that Colonel Berwick had absolutely nothing to do with either the EIG's investigation of her position or the subsequent downgrade ordered by Lieutenant General Ballard.

<u>still required to demonstrate the existence of an adverse employment action</u>. Consequently, as Defendant made clear at pages 10-12 of his Memorandum, Plaintiff's claims cannot advance under any avenue of proof (whether by offering direct evidence of discrimination or by proceeding under the *McDonnell Douglas* burden-shifting framework), unless she has suffered an adverse employment action.

*Third*, Plaintiff alleges that, "[u]pon learning of the potential loss of earnings and benefits, [she] was humiliated, suffered pain and mental anguish . . . ." Pl. Aff. (Ex. 2 to Pl. Opp. Mem.), at ¶ 7. She then argues that, because Title VII permits <u>the recovery of damages</u> for pain and suffering, and she has alleged embarrassment and mental anguish, she has therefore suffered an adverse employment action. Pl. Opp. Mem. at 5.

With this argument, Plaintiff invites the Court to reject the entirety of Fourth Circuit precedent on what constitutes an adverse employment action and turn discrimination law on its head by allowing the availability of <u>damages</u> to govern the <u>liability</u> issue. In other words, Plaintiff maintains that if she alleges emotional injury, the Court need not be concerned if she has actually suffered a personnel action that adversely affected a term, condition, or benefit of her employment – the test established by the Fourth Circuit for determining whether an adverse employment action is present. *E.g., Munday v. Waste Management of N. Amer., Inc.*, 126 F.3d 239, 243 (4th Cir. 1997), *cert. denied*, 522 U.S. 1116 (1998) ("In no case in this circuit have we found an adverse employment action . . . without evidence that the terms, conditions, or benefits of [plaintiff's] employment were adversely affected.").

Plaintiff's novel argument that employment actions which result in emotional injuries are, therefore, adverse employment actions – an argument unsupported by a single case citation from any

circuit (or any other authority) – is simply not the law and would lead to absurd results, if adopted. For example, assume an employee receives a verbal reprimand that does <u>not</u> affect the terms, conditions, or benefits of the employee's employment. Nevertheless, the employee is extremely upset by the reprimand, suffers emotional distress, and is treated by a psychologist. Under Plaintiff's view, because damages for emotional distress may be recovered as compensatory damages under Title VII, that employee has now suffered an adverse employment action.

The statutory framework and history of Title VII also defeat Plaintiff's argument. Section 717(a) of the Civil Rights Act of 1964, added by the 1972 Amendments to Title VII, provides the basis for a federal employee's race, sex, religion, color, or national origin discrimination claims. 42 U.S.C. § 2000e-16(a). The "personnel actions" portion of this provision underlies the "adverse employment action" prerequisite for maintaining discrimination claims. *See* Def. Mem. at 9. It was not until 1991, however, that Congress broadened the waiver of sovereign immunity under Title VII to provide for an award of compensatory damages against the government where there has been a finding of discrimination or retaliation in employment. 42 U.S.C. § 1981a.[3] But the Amendments

---

[3] Section 1981a is silent regarding compensatory damages under the Age Discrimination in Employment Act ("ADEA"), so there is no authority permitting their recovery in ADEA cases. *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1241 (4th Cir. 1995) ("unlike the ADEA, Title VII now permits the recovery of both compensatory and punitive damages, neither of which had previously been available under Title VII"); *accord Villescas v. Abraham*, 311 F.3d 1253, 1260 (10th Cir. 2002) (Congress "conspicuously chose not to" extend "the remedies available under the federal employee ADEA when it amended Title VII and other Acts in the Civil Rights Act of 1991 to permit compensatory damages"). As such, Plaintiff's spurious argument that the availability of damages somehow could support liability can only apply to her gender discrimination claims – not her ADEA claims. In any event, Plaintiff failed to offer any specific arguments in support of her ADEA claims; accordingly, they should be deemed abandoned. *See Adams v. Calvert County Public Schools*, 201 F. Supp.2d 516, 519 (D. Md. 2002) (Chasanow, J.) (granting defendant summary judgment in race discrimination case where plaintiff did "not advance any argument in his opposition to Defendant's motion for summary judgment in support of his race discrimination claim"); *Mentch v. Eastern Sav. Bank, FSB*, 949 F. Supp. 1236, 1246-47 (D. Md. 1997) (Davis, J.) (finding that pregnancy

permitting compensatory damages did not create an independent cause of action; rather, <u>recovery of compensatory damages is wholly dependent on a finding of liability under Title VII</u>. *Galliher v. Rubin*, 969 F. Supp. 1329, 1330-31 (S.D. Ga. 1997); *Presutti v. Felton Brush, Inc.*, 927 F. Supp. 545, 550 (D.N.H. 1995) ("Section 1981a merely expands the remedies available under substantive acts . . ."); *West v. Boeing Co.*, 851 F. Supp. 395, 398 (D. Kan.1994) (Section 1981a "does not, either expressly or impliedly, create an additional, separate and independent cause of action for employment discrimination plaintiffs, but merely adds to the damages available to such plaintiffs under Title VII").

Consequently, the availability of compensatory damages for pain and suffering under 42 U.S.C. § 1981a does not and cannot eliminate Plaintiff's burden of proving her entitlement to those damages under the substantive provisions of Title VII and the interpretive case law. And without proving that she suffered an adverse employment action under the established precedent cited in Defendant's Memorandum at pages 12-15, Plaintiff is unable to prove an essential element of her case on which she will bear the burden of proof at trial. Therefore, if her claims are not dismissed, summary judgment in Defendant's favor should issue.

---

discrimination plaintiff abandoned her harassment claim "because in her response brief [plaintiff] did not specifically address [defendant's] harassment argument.").

**CONCLUSION**

For the reasons set forth herein and in Defendant's initial Memorandum, Plaintiff's Complaint should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) or, alternatively, summary judgment should be granted for Defendant on all claims asserted against him pursuant to Fed. R. Civ. P. 56(c).

                              Respectfully submitted,

                              Thomas M. DiBiagio
                              United States Attorney


                        By:    / s /
                              Neil R. White
                              Assistant United States Attorney
                              Fed. Bar No. 24273
                              6625 United States Courthouse
                              101 West Lombard Street
                              Baltimore, Maryland  21201-2692
                              phone (410) 209-4830


Of Counsel:
Thomas X. McHugh
Office of Counsel
U.S. Army Corps of Engineers, Pittsburgh District
William S. Moorhead Federal Building, 1000 Liberty Avenue
Pittsburgh, Pennsylvania 15222
phone (412) 395-7494